165 F.3d 34
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Mohammed Ali NONAHAL, Defendant-Appellant.
 No. 97-3423.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 20, 1998.*
Decided Oct. 27, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 96 CR 196. J.P. Stadtmueller, Chief Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. JOEL M. FLAUM, Hon. FRANK H. EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Mohammed Ali Nonahal pleaded guilty to conspiracy to counterfeit federal reserve notes in violation of 18 U.S.C. §§ 371 and 471. The district court sentenced him to 31 months imprisonment and three years supervised release. Nonahal's appeal was timely filed, but, after reviewing the record, appellate counsel has moved to withdraw on the ground that there is no non-frivolous issue for appeal. Appellate counsel filed an Anders brief complying with the standard we set out in United States v. Wagner, 103 F.3d 551, 553 (7th Cir.1996). Nonahal received notice of his attorney's actions pursuant to Circuit Rule 51(a), and he filed a response. After reviewing the potential grounds for appeal discussed in the Anders brief and Nonahal's response, we conclude that these proposed issues are frivolous. Therefore, we grant counsel's motion to withdraw and dismiss the appeal.
 
 
 2
 The first potential basis for appeal addressed in counsel's Anders brief is that Nonahal should have received only a five-point increase in offense level under U.S.S.G. § 2B5.1(b)(1), not an eight-point increase. Section 2B5.1(b)(1), by cross-reference to U.S.S.G. § 2F1.1(b)(1), provides for a five-point increase if the "face value" of the "counterfeit" notes is more than $40,000 but less than $70,000, and an eight-point increase if the face value is more than $200,000. Nonahal could argue that, although the government recovered more than $200,000 in counterfeit currency, supporting the eight-point increase, he intended to distribute only $68,000 of "passable" counterfeit currency. Nonahal could argue that it would have been impossible for him to distribute the rest of the currency, because it was incomplete or defective.
 
 
 3
 However, it would be frivolous for Nonahal to argue that he intended to distribute only the completed, non-defective counterfeit currency. This court has held that when sentencing a defendant for involvement in a counterfeiting conspiracy, it is proper to include partially completed counterfeit bills in sentencing calculations. United States v. Ramacci, 15 F.3d 75, 79 (7th Cir.1994). In Ramacci, we looked to the language of Application Note 2 to § 2B5.1, which defines as counterfeit any bill that is "falsely made or manufactured in its entirety." Application Note 2 does not require counterfeit instruments to be "complete." Id. at 78.
 
 
 4
 In addition, in Ramacci we expressly endorsed the analyses in United States v. Lamere, 980 F.2d 506, 513 (8th Cir.1992), and United States v. Rodriguez, 989 F.2d 583, 586 (2nd Cir.1993), where both courts held that counterfeit currency does not have to be of passable quality to count for purposes of determining the defendant's offense level. Ramacci, 15 F.3d at 79. The facts of Rodriguez are particularly close to the case at hand. There the court rejected the defendant's argument that twenty-two large garbage bags containing approximately $15 million in defective currency should not count for determining his offense level, because he did not intend to distribute the "garbage" currency. 989 F.2d at 584-85. The Rodriguez court also noted that, under U.S.S.G. § 1B1.3, relevant conduct for determining the offense level includes the act of producing the counterfeit currency, whether it is defective or not. 989 F.2d at 586.
 
 
 5
 In light of precedent which clearly rejects Nonahal's potential argument, it would be frivolous for Nonahal to raise it. The district court appropriately cited Ramacci when it held that the face value of all of the recovered counterfeit currency, even if it was defective or incomplete, counted for purposes of determining Nonahal's offense level.
 
 
 6
 The other potential basis for appeal that counsel's Anders brief identifies is that the district court erred in finding that Nonahal was a "leader or organizer" of the conspiracy, and therefore Nonahal's offense level should not have received a four-point increase under § 3B1.1(a). We review a district court's factual determinations regarding a defendant's role in the offense for clear error. United States v. Anaya, 32 F.3d 308, 311 (7th Cir.1994) (citations omitted). Under the clear error standard of review, we accord great deference to the district court's findings, and reverse its judgment only if our review of the record leaves us with a definite and firm conviction that a mistake has been committed. Id.
 
 
 7
 It would be frivolous for Nonahal to argue that the district court clearly erred. The testimony given at the sentencing hearing by Nonahal's co-conspirator and the special agent who investigated the case, and the statements of the owner of the print shop where Nonahal purchased the equipment all support the conclusion that Nonahal exercised a significant amount of control and authority over the conspiracy. These witnesses stated that Nonahal negotiated the acquisition of the printing equipment, found a place to run the operation, purchased the inks, recruited co-conspirators, decided how much money the co-conspirators would make, sent two of the co-conspirators to Iowa to pick up software, and ordered one of the co-conspirators to bond out another when the first was arrested on another offense. The only conflicting evidence was Nonahal's own testimony, and the district court found that Nonahal was not credible. This court gives special deference to the district court's credibility determinations and declines to re-weigh the evidence. United States v. Fox, 137 F.2d 527, 531 (7th Cir.1998) (citations omitted).
 
 
 8
 Nonahal might also argue that he was not the leader because one of his co-conspirators funded the illegal venture and another had the necessary printing expertise. However, the district court properly considered Nonahal's relative responsibility for the offense. Cf. Ramacci, 15 F.3d at 79 (holding that, although Ramacci's co-conspirators possessed the requisite printing skills and actually printed the counterfeit bills, Ramacci was an organizer because he recruited co-conspirators into his scheme, rented the space for the operation, and financed the equipment). Moreover, more than one person may be deemed an organizer or leader. See U.S.S.G. § 3B1.1, comment. (n. 4). Therefore, even if one of Nonahal's co-conspirators were found to play an equally important role in the conspiracy, Nonahal's role would not automatically be lessened. See, e.g., United States v. McClinton, 135 F.3d 1178, 1191-1192 (7th Cir.) (holding that two defendants were leaders or organizers because one had access to money, gave directions to the others, and was characterized as "running the show," while the second defendant gave directions to and recruited other participants), cert. denied, --- U.S. ----, 118 S.Ct. 2308, 141 L.Ed.2d 167 (1998).
 
 
 9
 Counsel's Anders brief notes no other issues of merit that could be raised on appeal. Nonahal's response to the Anders brief also fails to raise any new issues of merit. Nonahal tries to show that his appeal would not be frivolous by pointing to a letter written by his former attorney advising him of possible issues to raise on appeal. He also argues that, because the district court allowed him to proceed on appeal in forma pauperis, his appeal could not be frivolous. Both the letter and the district court's order were prepared before Nonahal's appellate counsel reviewed the record and made his motion to withdraw. Neither of these documents raises any other potential issues that Nonahal could argue on appeal.
 
 
 10
 Nonahal also argues that the four-point increase for his role as "leader or organizer" was not proper because his co-defendants were equally capable of being organizers, leaders, or managers. Regardless of what the capabilities of Nonahal's co-defendants may or may not have been, Nonahal cannot argue that the district court's finding regarding his own role was clearly erroneous, as discussed above.
 
 
 11
 Nonahal also cites to United States v. Bryson, 110 F.3d 575, 584 (8th Cir.1997), where the court reversed an increase under § 3B1.1 because the defendant was a middleman who did not have greater responsibility than her co-defendants. Likewise, this court has reversed increases for being a "leader or organizer" in situations where middlemen in large conspiracies did not have more responsibility than other participants, or where the middlemen did not tell co-conspirators what to do. United States v. Vargas, 16 F.3d 155, 160 (7th Cir.1994); United States v. Brown, 944 F.2d 1377, 1381 (7th Cir.1991). These situations do not apply to the instant case, where the record supports the district court's finding that Nonahal had more responsibility than the other co-conspirators.
 
 
 12
 For these reasons, we GRANT counsel's motion to withdraw and DISMISS the appeal.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(e); Cir. R. 34(f)